ROSNER, BARRY & BABBITT, LLP
Gregory T. Babbitt, SBN: 214299
David L. Herman, SBN: 216469
10085 Carroll Canyon Road, Suite 100
San Diego, CA 92131
Telephone: (858) 348-1005
Facsimile: (858) 348-1150
greg@rbblawgroup.com
david@rbblawgroup.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB ROSBACKA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN JOHNSON'S CARS, a company of unknown form; AEGIS SECURITY INSURANCE COMPANY, a corporation; FUENTES AUTO SALES, INC., a corporation dba OLYMPIC AUTO SALES; FRANK FUENTES, an individual; THE GUARANTEE COMPANY OF NORTH AMERICA USA, a corporation; NAVY FEDERAL CREDIT UNION, a federally chartered credit union; and DOES 1 through 75, inclusive,<br><br>Defendants. | Case No. 16CV-1086-GPC-WVG<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT NAVY FEDERAL CREDIT UNION'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE REMANDED FOR LACK OF SUBJECT MATTER JURISDICTION<br><br>Date: October 28, 2016<br>Time: 1:30 p.m.<br>Ctrm: 2D<br><br>Complaint filed: February 26, 2016 |

# TABLE OF CONTENTS

1. Introduction ..................................................................................................1
2. The Amount In Controversy Is Not Satisfied on the Basis of Rescission, Because Plaintiff Only Prays for Rescission for His Individual Claims Not for the Entire Class ......................................................................................4
3. NFCU Does Not Meet the Amount In Controversy under the UCL, Because It Relies on Generalized, Conclusory, and Speculative Statements Regarding the Compliance Costs Arising from a Potential Injunction; The Amount In Controversy is Limited To Money Already Paid by Class Members Through Wrongfully-Increased Interest Rates ..............................................................
4. NFCU Incorrectly Includes Unavailable and Not-Prayed-For Classwide Actual Damages for Emotional Distress and Double-Counts as Actual Damages Amounts That Would Also Be Recovered as Restitution under the UCL; Thus, Rosenthal Act Recovery is Limited to $500,000 in Statutory Damages ......................................................................................................7
5. Because the Total Amounts to be Paid by NFCU to the Class Members Are Well Below $5 Million, Even the Inclusion of Attorneys' Fees Would Not Increase the Amount in Controversy Beyond $5 Million ..............................9
6. The Class Involved is Very Narrow, and NFCU's Calculations May be Erroneous, Because They May Improperly Include Threat-Letters Sent to Members Who Did Not Buy From Dealerships and "Converted" Loans for NFCU Members Who Bought From Non-California Dealerships .................9
7. NFCU Claims "Ambiguity" Regarding the Preservation of Claims Clause When No Ambiguity Exists.......................................................................11
8. Part II of NFCU's Response Should Be Stricken as it is an Improper Second Reply In Support of Its Motion to Dismiss and Seeks to Litigate Issues Not Requested by the Court to Be Addressed in the Order to Show Cause ........11
9. Conclusion .................................................................................................13

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Garnett v. ADT LLC*
   74 F.Supp.2d 1332 (E.D. Cal. 2015) .................................................................. 9

*Guglielmino v. McKee Foods Corp.*
   506 F.3d 696 (9th Cir. 2007) ............................................................................. 9

*Korn v. Ralph Lauren Corp.*
   536 F.Supp.2d 1199 (E.D. Cal. 2008) ............................................................... 1

*Kroske v. U.S. Bank Corp.*
   432 F.3d 976 (9th Cir. 2005) ............................................................................. 5

*Mora v. Harley-Davidson Credit Corp.*
   2009 WL 464465 (E.D. Cal. Feb. 24, 2009) .................................................... 6

*Rosas v. Carnegie Mortgage, LLC*
   2012 WL 1865480 (C.D. Cal. May 21, 2012) .................................................. 7

*Singer v. State Farm Mut. Auto. Ins. Co.*
   116 F.3d 373 (9th Cir. 1997) ............................................................................. 5

**FEDERAL STATUTES**

15 U.S.C. § 1692e(2)(A) ......................................................................................... 12

15 U.S.C. § 1692f .................................................................................................... 12

15 U.S.C. § 1692e(5) ............................................................................................... 12

**CALIFORNIA CASES**

*Kasky v. Nike, Inc.*
   27 Cal.4th 939 (2002) ..................................................................................... 12

**CALIFORNIA STATUTES**

Business. & Professions Code § 17200 et seq. ........................... 2, 3, 4, 5, 7, 8, 9, 12

Civil Code § 1788 et seq. .............................................................................. 2, 8, 9, 12

Civil Code § 1788.17 ............................................................................................... 12

Civil Code § 1788.30(c) ............................................................................................ 9

Civil Code § 1788.30(f) ............................................................................................ 7

Code of Civil Procedure § 1021.5 ............................................................................ 9

## 1. Introduction

In its Response to the Order to Show Cause, Defendant Navy Federal Credit Union ("NFCU") has the burden of proof; it must produce evidence showing, by a preponderance of the evidence, that the amount in controversy is in excess of $5 million. *Korn v. Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008). As will be explained below, NFCU has not met its evidentiary burden, and therefore it has not shown that this Court possesses subject matter jurisdiction under the Class Action Fairness Act.

This case has two different parts, only one of which is at issue in the Order to Show Cause. NFCU confuses the two in its Response, so a brief explanation of the differences is needed.

The first part – which is not at issue – consists of Plaintiff's individual claims brought against the dealership that sold him a vehicle without listing NFCU as the lienholder on the title documents, the surety company that issued the dealer's bond to the dealership, and various other parties. NFCU is named as a defendant, but the only basis for its liability on the individual claims is the Preservation of Claims Clause in the loan agreement, under which NFCU steps into the shoes of the dealership and is liable for the dealership's wrongdoing. Plaintiff's prayed-for remedies in the individual claims are rescission of his sales contract, restitution, actual damages based on the dealership's acts, and attorney's fees and costs.

The second part, which is the basis of the Order to Show Cause, are the claims brought on behalf of two narrowly-defined classes. The members of these classes are NFCU members who bought vehicles with loans from NFCU, which loan agreements contained the Preservation of Claims Clause, and against whom NFCU raised, or threatened to raise, the loans' interest rates when the dealerships failed to have NFCU's interest recorded on the titles of the vehicles. *These classes do not seek rescission, contrary to what NFCU claims in its Response.* Instead, the prayed-for relief is damages (actual and statutory) and restitution of money charged and

collected by NFCU under the increased interest rates, together with an injunction against future interest rate increases and attorneys' fees and costs. The bases of these claims are in the first and second causes of action of the First Amended Complaint ("FAC") for violations of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act", Cal. Civ. Code §1788 et seq.) and the Unfair Competition Law ("UCL"; Cal. Bus. & Prof. Code § 17200 et seq.).

NFCU relies on a declaration from its Assistant Vice President that gives figures as to how many "reminder" (i.e., interest-rate-increase-threat) letters are sent and how many loans were "converted" to a higher interest rate, and the amount of money collected as a result of the increased interest rates. However, that declaration does not calculate how many letters were sent to NFCU members who bought their vehicles in private-party transactions in California, or how many "converted" loans belonged to NFCU members in California. Thus, the potential size of the class may be substantially less than NFCU's claimed figure of more than 50,000 members, which undercuts NFCU's calculations to support its claims of meeting the amount in controversy.

Furthermore, NFCU errs in its calculations of damages. Aside from its erroneous claim that this case seeks class-wide rescission, NFCU incorrectly claims that the threshold is met by awarding actual damages for emotional harm to all class members – which Plaintiff is not seeking in his prayer for relief. Such claims are too individualized to be included in a class action for persons who are members of a class. Instead, the actual damages at issue are calculated differently depending on whether a class member is in the Rosenthal Act class (for the period of February 26, 2015 to February 26, 2016) or the UCL class (for the period of February 26, 2012 to February 26, 2016). The maximum actual damages or refund is for the UCL class, which consists of the increased interest paid by those class members between February 26, 2012 and February 26, 2016 – a sum calculated by NFCU which is approximately $3.2 million. Persons with actual damages within the Rosenthal Act

class are those who made payments on loans with increased interest rates. Thus, they are within the $3.2 million total for restitution for the UCL class; they do not get to double-count the damages. NFCU concedes that the limit for statutory damages under the Rosenthal Act is $500,000. When statutory are added to actual damages and restitution, the total is still only $3.7 million – and with attorney's fees to be calculated at 25% of the total recovery, pursuant to other court rulings, the $5 million threshold is still not met.

NFCU's claim that the costs of compliance with the prayed-for injunction exceeds $5 million is also incorrect. Any money that NFCU would stand to collect in the future from increased interest rates should not be included, and NFCU does not present any calculations for how much money it expects to collect year after year in the future. Thus, NFCU's argument is devoid of facts and is purely speculative – not enough to meet its burden of showing that the injunction's costs exceed $5 million.

Lastly, NFCU improperly reargues the merits of Plaintiff's case and claims its letters are not threats, but "reminders." NFCU's argument on these points is an improper second reply in support of its motion to dismiss, which was neither requested nor authorized. Thus, it should be stricken or disregarded. Nevertheless, NFCU's letters are not reminders, but are threats under state and federal debt-collection law to do something that NFCU cannot do under the law or the terms of the loan agreements with its members: increase the interest rate on auto-purchase loans for not listing NFCU as the lienholder, because such failure was the fault of the sellers of the vehicles.

Plaintiff asks the Court to reject NFCU's arguments and find that subject-matter jurisdiction does not exist here.

///
///
///

**2. The Amount In Controversy Is Not Satisfied on the Basis of Rescission, Because Plaintiff Only Prays for Rescission for His Individual Claims – Not for the Entire Class**

NFCU alleges that Plaintiff prayed for class-wide rescission, and therefore the amount-in-controversy requirement is met. Response, 4:5-5:12. NFCU misstates the prayer for relief, which seeks only rescission for Plaintiff. Therefore, the amount-in-controversy cannot be met through rescission.

*Contrary to what NFCU claims, there is no prayer for class-wide rescission.* Paragraphs 69 and 80 of the FAC, which state the relief Plaintiff seeks under the First and Second Causes of Action for class-wide relief, do not include rescission as a request for the classes. In addition, the FAC's prayer for relief does not ask for class-wide rescission. *The only reference to rescission in the prayer for relief is for Plaintiff's own purchase contract, which arises from his individual claims against the non-NFCU defendants*. FAC, p. 33 (Prayer for Relief, part 7).

The reference in Paragraph 28(p) of the First Amended Complaint ("FAC") to class-wide rescission was an error as it is inconsistent with the prayer for relief and the specific remedies sought in the FAC's First Cause of Action for violation of the Rosenthal Act and the Second Cause of Action for violation of the UCL. FAC ¶¶ 69, 80. Thus, NFCU's reliance on it is mistaken. Plaintiff apologizes for any confusion this may have caused.

**3. NFCU Does Not Meet the Amount In Controversy under the UCL, Because It Relies on Generalized, Conclusory, and Speculative Statements Regarding the Compliance Costs Arising from a Potential Injunction; The Amount In Controversy is Limited To Money Already Paid by Class Members Through Wrongfully-Increased Interest Rates**

Next, NFCU claims that the amount in controversy is met because Plaintiff (allegedly) seeks an order requiring NFCU "to refund any payments it has received under the subject loans" and enjoining NFCU "from collecting on those loans in the

///
///

future" and from "increasing interest rates in the future," which would result in NFCU losing "hundreds of millions of dollars under any scenario." Response, 6:1-8, 6:18-24.

Since Plaintiff is not seeking class-wide rescission, this scenario of NFCU losing hundreds of millions of dollars is inaccurate. Moreover, conclusory allegations by NFCU will not suffice to overcome the traditional presumption against removal jurisdiction. *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 375 (9th Cir.1997). Instead, the courts may look beyond pleadings and consider other evidence relevant to the amount in controversy, tested as of the time of removal. *Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005).

Instead, Plaintiff's UCL class claim seeks three things: (1) an order prohibiting NFCU from raising the interest on the loans at issue; (2) for those loans with increased interest rates, an order requiring the reduction of the interest rate to the original contracted-for rate and an adjustment of the account balance back to the original amounts; and (3) restitution of any money overpaid during the period that the interest rate was raised. The time period for this would be the UCL's four-year statute of limitations, which would be from February 26, 2012 to February 26, 2016. As NFCU has calculated, the amount for the loans "converted" to a higher interest rate between February 26, 2012 and February 26, 2016 is $3,227,150.84 – well under the $5 million threshold. Response, Pendergast Decl., ¶ 5. Furthermore, as explained below (Part 4, infra), the amount appears to be less than that for two reasons. First, NFCU's supporting declaration does not state if all of the "converted" loans are for non-California borrowers, which affects the calculations significantly. Second, this number of $3,226,150.84 appears to include amounts in interest that would be collected in the future. Since NFCU never had the right to collect these amounts and they were never collected, they should not be included in the amount considered for subject-matter jurisdiction under the Class Action Fairness Act.

///

With regard to the costs of compliance with an injunction forbidding NFCU from increasing the interest rates, NFCU's statement that "it is therefore reasonable to presume that an injunction will cost Navy Federal at least as much or more in the future" as a disgorgement of the extra money collected from the increased-rate loans is pure speculation and generalization. NFCU has submitted no declarations or documentary evidence to show that the costs of an injunction would exceed $5 million. The money that NFCU would stand to collect in the future, but for the injunction, has not been calculated or even estimated. Therefore, NFCU's reliance on the prayed-for injunction as meeting the amount in controversy fails.

NFCU's supporting caselaw does not aid NFCU's case, because the circumstances of this case are very different. In *Mora v. Harley-Davidson Credit Corp.*, 2009 WL 464465 (E.D. Cal. Feb. 24, 2009), the proposed class to be benefitted by injunctive relief consisted of person "from whom [defendants] claims it is owed a deficiency" on vehicle repossessions where the repossession notices did not comply with California law. *Id.* at *1. The defendants presented evidence that there were 2,512 repossessions for which deficiencies were still owed after post-repossession sale, and that the average amount of deficiency was between $7,300 and $8,100. *Id.* at *4. The court could then determine, and did determine, that based on the presented evidence of over 2,500 class members with an average account deficiency of $7,000 to $8,000 each, the amount-in-controversy threshold was met since the defendants would be enjoined from collecting an already-owed amount well in excess of $5 million.

In this case, unlike Mora, there is no already-identified sum that NFCU would be enjoined from collecting. The injunction is meant to be prospective. It would not only stop NFCU from collecting money already owed under the increased interest rates, but forbid NFCU from raising interest rates and collecting additional money in the future. NFCU cannot show any sort of identifiable sum similar to the

///

to-be-enjoined deficiency amounts in Mora. Therefore, NFCU's reliance on *Mora* fails.

Similarly, NFCU's reliance on *Rosas v. Carnegie Mortgage, LLC*, 2012 WL 1865480 (C.D. Cal. May 21, 2012) fails because Plaintiff is not seeking to get an injunction to strip NFCU of its ability to seize collateral in the event of a default. *Rosas* involved a prayer for injunctive relief to enjoin foreclosures of properties nationwide where the properties' mortgages were owned by Fannie Mae or serviced by one of the mortgage loan services administering the HAMP program. *Id*. at *5. Because "the property is the object of the litigation" when "the primary purpose of the lawsuit is to enjoin a bank from selling or transferring the property," and the proposed injunction would stop foreclosures of many properties, the court concluded that the amount in controversy had been met.

Unlike *Rosas*, Plaintiff is seeking an injunction to stop NFCU from increasing interest rates in the future. Plaintiff is not seeking a class-wide rescission, nor is he seeking to prevent NFCU from being able to seize the collateral for the loans (the vehicles).

Because neither the amount to be refunded nor the costs of compliance with the proposed injunction meet the amount-in-controversy threshold, NFCU's claim that the amount in controversy is met under the UCL class cause of action fails.

**4. NFCU Incorrectly Includes Unavailable and Not-Prayed-For Classwide Actual Damages for Emotional Distress and Double-Counts as Actual Damages Amounts That Would Also Be Recovered as Restitution under the UCL; Thus, Rosenthal Act Recovery is Limited to $500,000 in Statutory Damages**

The class claim under the Rosenthal Act is subject to the Rosenthal Act's one-year statute of limitations. Cal. Civ. Code § 1788.30(f). The relevant time period for the calculation of statutory and actual damages would be from February 26, 2015, to February 26, 2016.

///

-7-
PLAINTIFF'S OPPOSITION TO DEFENDANT NAVY FEDERAL CREDIT UNION'S RESPONSE TO ORDER TO SHOW CAUSE

NFCU concedes that the class-wide statutory damages under the Rosenthal Act are capped at $500,000. Response, 7:14-22. However, NFCU then claims that the remaining $4.5 million in actual damages to meet the amount-in-controversy threshold would be met by each person who received a threatening letter from NFCU between February 26, 2015 and February 26, 2016 being able to recover at least $279 in actual damages for emotional harm. Response, 8:7-11, fn. 5.

NFCU's calculation of the actual damages under the Rosenthal Act is erroneous for several reasons. First, Plaintiff is not seeking a class-wide award of actual damages based on emotional harm. Indeed, the word "emotional" does not even appear anywhere in the FAC. Also, emotional harm is a particularized, individual injury; it cannot be awarded on a class-wide basis. In fact, *all* of NFCU's supporting cases on this issue involved individual lawsuits, not class actions. Therefore, the calculation of actual damages does not include damages for emotional harm.

Second, the actual damages at issue under the Rosenthal Act class-wide cause of action are identified and total less than $4.5 million. The actual damages would include the amounts NFCU has already collected from class members when it "converted" the interest rates and class members made payments on the higher interest rates. As already described in the discussion of the UCL class claim, NFCU has stated that it collected $3,227.150.84 under the "converted" interest rates between February 26, 2012 and February 26, 2016. Response, Pendergast Decl., ¶ 5. Since the Rosenthal Act has a one-year statute of limitations, only the amounts collected between February 26, 2015 and February 26, 2016 would be actual damages – which would be less than $3,227,150.84. Nevertheless, these amounts cannot be double-counted for purposes of meeting the amount-in-controversy threshold. If loans made only in California are considered (see Part 5 below), the sum may be even less. In any event, even using NFCU's 2012-2016 numbers, the
///

total actual and statutory damages under the Rosenthal Act would only be $3,777,150.84 (including the $500,000 maximum statutory damages).

Thus, NFCU has not met the amount in controversy under the Rosenthal Act cause of action.

### 5. Because the Total Amounts to be Paid by NFCU to the Class Members Are Well Below $5 Million, Even the Inclusion of Attorneys' Fees Would Not Increase the Amount in Controversy Beyond $5 Million

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir.2007). In this case, the class claims are brought under the Rosenthal Act and UCL, which authorize the recovery of attorney's fees and costs. Cal. Civ. Code 1788.30(c); Cal. Code Civ. Proc. § 1021.5. Thus, attorney's fees are to be included in the amount-in-controversy calculation for this case.

Since the actual and statutory damages at issue in this case do not exceed $3,777,150.84, to exceed the $5 million threshold Plaintiff would have to have $1,222,849.16 or more in fees. Courts have held that a reasonable figure of attorneys' fees, for purposes of determining the amount in controversy, is 25% of recovery. *Garnett v. ADT LLC*, 74 F.Supp.2d 1332, 1337 (E.D. Cal. 2015). 25% of $3,777,150.84 is $944,287.71. Adding $3,777,150.84 and $944,287.71 produces a total of $4,721,438.55 – still below the amount-in-controversy threshold.

### 6. The Class Involved is Very Narrow, and NFCU's Calculations May be Erroneous, Because They May Improperly Include Threat-Letters Sent to Members Who Did Not Buy From Dealerships and "Converted" Loans for NFCU Members Who Bought From Non-California Dealerships

NFCU contends, based on the declaration of its Assistant Vice President, Mr. Pendergast, that the class consists of (depending on which timeframe is involved), "more than 50,000 members" – be it 72,064 members, 56,881 members, 10,724

///

members, 8,259 members, 16,170 members, or 1,511 members. Response, 1:8-2:4; Pendergast Decl., ¶¶ 3-8.

However, NFCU's statements do not prove that the class is as wide-ranging as it contends. NFCU's response and Mr. Pendergast's declaration do not say how many of the letters were sent to NFCU members who bought their vehicles from California dealerships, and how many were sent to NFCU members who bought their vehicles in private-party transactions. If NFCU sends letters to persons who bought from private parties (or increased their interest rates later), those persons may be improperly included in NFCU's counts.

Moreover, with regard to the loans on which the Annual Percentage Rate was "converted" to a higher interest rate, Mr. Pendergast does not state how many of the 10,724 loans converted between February 26, 2012 and February 26, 2016 (including 8,259 loans between February 26, 2012 and March 31, 2015) were for NFCU members who bought their vehicles from California dealerships. Those portions of his declaration, unlike those portions addressing the letters sent to NFCU members in California, do not say whether all of the "converted" loans were for purchases made in California. Pendergast Decl., ¶¶ 5-6 (number of loans converted); *Id.*, ¶¶ 4, 7, 8 (number of letters sent to "various individuals residing in the State of California"). NFCU is a nationwide credit union with millions of members and 277 branches throughout the world.[1] If many of the "converted" loans are for NFCU members who bought their vehicles outside of California, the numbers may be adjusted downward – possibly substantially downward.

While the potential class remains amorphous, it is substantially less than the "more than 50,000" claimed by NFCU. Because it is NFCU's burden to meet the threshold by a preponderance of the evidence, the $5 million threshold is not met.

---

[1] https://www.navyfederal.org/pdf/publications/annual-report/annual_report2015.pdf. Plaintiff respectfully requests that the Court take judicial notice of the NFCU Annual Report.

### 7. NFCU Claims "Ambiguity" Regarding the Preservation of Claims Clause When No Ambiguity Exists

In footnote 1 of its Response, NFCU claims that Plaintiff "created ambiguity with respect to the scope of the proposed class" regarding the common question of the inclusion of the Preservation of Claims Clause. Response, p. 2, fn. 1; see FAC, p. 8, ¶ 28(b).

NFCU's argument is incorrect because there is no ambiguity. The two classes include those loan agreements containing the Preservation of Claims Clause. Thus, if a borrower's loan agreement contains the Preservation of Claims Clause (in addition to meeting the other five stated criteria in paragraph 24 of the FAC), then he is a class member. If it does not, then the borrower is not a class member.

### 8. Part II of NFCU's Response Should Be Stricken as it is an Improper Second Reply In Support of Its Motion to Dismiss and Seeks to Litigate Issues Not Requested by the Court to Be Addressed in the Order to Show Cause

In Part II of its Response, NFCU discusses the merits of its motion to dismiss and seeks to have the case dismissed under Rule 12(b)(6) instead of Rule 12(b)(1). This is wholly improper because it is outside the scope of the Court's Order to Show Cause and thus it should be stricken or disregarded.

The Order to Show Cause asked NFCU to explain why federal subject-matter jurisdiction existed, *not whether Plaintiff had failed to state a cause of action*. Order, p. 1 (heading); Order, 3:9-11 (potential lack of subject matter jurisdiction and request for response explaining why case should not be remanded for lack of subject matter jurisdiction). Part II of NFCU's Response is actually a second reply brief in support of its motion to dismiss.

NFCU tries to justify its action because of "this Court's seeming skepticism that Plaintiff and the putative class are entitled to relief based on the facts alleged" and that "[NFC] likewise agrees that Plaintiff and the punitive class cannot establish any entitlement" to relief. Response, 9:1-7. NFCU references the Court's characterization of the letter as a "reminder." Plaintiff does not believe this was an

///

indication from the Court that it questioned the merits of Plaintiff's claims. But because of this, Plaintiff is obligated to respond to NFCU's improper second reply.

A threat to do something while collecting a debt that the collector cannot do under the law or the terms of the contract (whether characterized as a threat or reminder) violates the Rosenthal Act and UCL.

The Rosenthal Act incorporates the Fair Debt Collection Practices Act ("FDCPA"). Cal. Civ. Code §1788.17. The FDCPA prohibits "[t]he threat to take any action that legally cannot be taken or that is not intended to be taken." 15 U.S.C. §1692e(5). Whether the letters sent by NFCU were reminders does not matter. They were threats to do something NFCU was not entitled to do.

Under the Preservation of Claims Clause, NFCU stepped into the shoes of the car dealers and thus could not threaten to do something that had been caused by the car dealers. The reason the borrowers could not get NFCU's lien listed on the title was due to the car dealers' failure to do this, despite having contractually agreed to do it. Thus, the letters form a threat, as well as a false, deceptive, or misleading statement in connection with the collection of a debt and an unfair or unconscionable means of attempting to collect a debt that is prohibited by the FDCPA and Rosenthal Act. See 15 U.S.C. §§ 1692e(2)(A), 1692f.

NFCU's characterization of the letters as "reminders" does not entitle it to evade Rosenthal Act/FDCPA liability as somehow not constituting a "threat." Neither state nor federal law require the threat to be made in a coarse or profane manner for it to be a legally-sanctionable threat. NFCU's letters "reminding" its members are just as much a "threat" under the law as a loan shark "reminding" his customer to pay in full or risk having his (the customer's) legs broken. Moreover, the threat to do something NFCU were not contractually permitted to do violates the UCL, as the violation of another statute by NFCU is a violation of the UCL. *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002).

///

## 9. Conclusion

NFCU incorrectly claims that Plaintiff is seeking the rescission of all class members' loans to show that the amount in controversy is met, and proffers conclusory statements, speculation, and a declaration with no supporting documentation as purported proof. To further attempt to buttress its arguments, it then mis-classifies its letters as "reminders" instead of legally-actionable threats for which actual damages and monetary penalties may be awarded. Lastly, NFCU tries to once again argue in support of its motion to dismiss, even though it has already filed a reply brief and the Court's Order to Show Cause limited NFCU's scope to subject-matter jurisdiction. However, the evidence presented show only that at most, the actual damages, statutory damages, and attorneys' fees for which NFCU may be responsible for ultimately paying do not meet, let alone exceed, the $5 million threshold.

For those reasons, NFCU's response to the Order to Show Cause should be rejected.

Dated: October 4, 2016                    ROSNER, BARRY & BABBITT, LLP

By: /s/ David L. Herman
_____
GREGORY T. BABBITT
DAVID L. HERMAN
Attorneys for Plaintiff