UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB ROSBACKA,<br><br>                              Plaintiff,<br><br>v.<br><br>JOHN JOHNSON'S CARS a company of unknown form; FUENTES AUTO SALES, INC. a corporation dba OLYMPIC AUTO SALES; FRANK FUENTES, an individual; THE GUARANTEE COMPANY OF NORTH AMERICA USA, a corporation; NAVY FEDERAL CREDIT UNION, a federally chartered credit union,<br><br>                              Defendants. | Case No.:  3:16-cv-1086-GPC-WVG<br><br>**ORDER REMANDING CASE FOR LACK OF SUBJECT MATTER JURISDICTION** |

Before the Court is Defendant Navy Federal Credit Union's ("NFCU") motion to dismiss Plaintiff Jacob Rosbacka's first amended complaint ("FAC").  ECF No. 8.  The motion is fully briefed.  ECF Nos. 15 & 16.  On September 7, 2016, the Court issued an order to show cause why the case should not be remanded for lack of subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  ECF No. 24.  Defendant filed a response to the Court's order to show cause on September 23,

1

2016. ECF No. 28. Plaintiff Rosbacka filed an opposition reply on October 4, 2016. ECF No. 29. Upon consideration of the moving papers and the applicable law, and for the reasons set forth below, the Court **REMANDS** the case back to the Superior Court of California, County of San Diego.

## BACKGROUND

The instant case arises from the purchase of a car with the proceeds of a loan obtained from NFCU. FAC ¶ 1, ECF No. 1-2 at 94. After Rosbacka, an individual on active duty in the United States Navy, bought a car from John Johnson's Cars, a used-vehicle dealership, he learned that the dealership did not own the vehicle he had purchased. FAC ¶ 48. Accordingly, Plaintiff never became the title owner of the car. *See id.* Because Plaintiff was not the title owner of the vehicle and could not provide NFCU with a security interest in the car, NFCU raised the interest rate on Plaintiff's auto loan in accordance with the terms of his loan agreement. *See* FAC ¶¶ 52-58. This suit followed.

On February 26, 2016, Plaintiff Rosbacka filed suit in the Superior Court of California, County of San Diego. Pl.'s Class Action Compl., ECF No. 1-2 at 4. Rosbacka filed a first amended complaint on April 7, 2016. FAC, ECF No. 1-2 at 92. The named defendants in the FAC are NFCU, a federally-charted credit union, John Johnson's Cars, a company of unknown form, Aegis Security Insurance Company, a corporation, Fuentes Auto Sales, a corporation, Frank Fuentes, an individual, and DOES 1 through 75. *Id.* The FAC asserts a variety of statutory and California state causes of action against NFCU and the other defendants on behalf of Plaintiff as an individual.[1] *Id.* The FAC also asserts two class action claims against NFCU only. *Id.*

---

[1] The individual claims asserted in the FAC were as follows: 1) violation of the California Unfair Competition Law by NFCU; 2) violation of the California Rosenthal Fair Debt Collections Practices Act by NFCU; 3) violation of the California Consumer Legal Remedies Act by NFCU; 4) violation of the UCL by John Johnson's Cars, Olympic Auto Sales, and Frank Fuentes; 5) fraud and deceit against John Johnson's Cars, Olympic Auto Sales, and Frank Fuentes; 6) negligent misrepresentation against John Johnson's cars, Olympic Auto Sales, and Frank Fuentes; 7) breach of warranty against John Johnson's

The class actions claims arise under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and the California Rosenthal Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq.* FAC ¶ 24, ECF No. 1-2 at 98. Plaintiff describes the two classes identically, with the exception of the class period. The Rosenthal Class includes all individuals:

> (1) who entered into a car loan agreement with NFCU at any point during the one year prior to the filing of the action (i.e., February 26, 2015); (2) whose agreements gave NFCU a security interest in, or lien on, the vehicle the individual purchased with the proceeds of the loans; (3) whose agreements contained the Preservation of Claims Clause; (4) who purchased motor vehicles from dealerships in the State of California using the proceeds from the loan agreements; (5) who did not record NFCU's security interest in or lien on the purchased vehicle with the DMV or on the title for the vehicle; (6) who received notice from NFCU that the APR on the loans would be raised because NFCU's security interest in or lien on the vehicles was not recorded with the DMV or on the certificates of title.

*Id.* The UCL Class includes all individuals:

> (1) who entered into a car loan agreement with NFCU at any point during the four years prior to the filing of the action (i.e., February 26, 2012); (2) whose agreements gave NFCU a security interest in, or lien on, the vehicle the individual purchased with the proceeds of the loans; (3) whose agreements contained the Preservation of Claims Clause; (4) who purchased motor vehicles from dealerships in the State of California using the proceeds from the loan agreements; (5) who did not record NFCU's security interest in or lien on the purchased vehicle with the DMV or on the title for the vehicle; (6) who received notice from NFCU that the APR on the loans would be raised because NFCU's security interest in or lien on the vehicles was not recorded with the DMV or on the certificates of title.

*Id.* With respect to damages, the FAC states that Plaintiff seeks for the class "equitable relief, including, injunctive, restitutionary, and other equitable monetary relief, and

---

Cars; and 8) violation of California Vehicle Code § 11711 against Aegis Security Insurance Co. and the Guarantee Company of North America USA.

statutory damages . . . ." *Id.* ¶ 25, ECF No. 1-2 at 99.  More specifically, Plaintiff states that with respect to violations of the Rosenthal Act, it seeks for himself and the class:

> 1) Actual damages under Civil Code § 1788.30(a) and 15 U.S.C. § 1692k(a)(1)[2] ("any actual damage sustained by such person as a result of such failure to comply");
> 2) Statutory damages under Civil Code § 1788.30(b) and 15 U.S.C. § 1692k(a)(2)(B) ("not to exceed the lesser or $500,000 or 1 per centum of the net worth of the debt collector"); and
> 3) Reasonable attorneys' fees and costs under Civil Code § 1788.30(c) and 15 U.S.C. § 1629k(a)(3).

*Id.* ¶ 80.  With respect to violations of the UCL, Plaintiff seeks for himself and for the class an order:

> 1) enjoining Navy Federal from engaging in the acts, methods, and/or practices as set forth in the FAC, and for payment of restitution;
> 2) requiring Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to conduct business via the unlawful and/or unfair business acts and practices; and
> 3) requiring Defendants to provide complete equitable monetary relief . . . including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition.

*Id.* ¶¶ 65, 69.  In his prayer for relief, Plaintiff does not seek a specific amount in damages. *See id.*, ECF No. 1-2 at 124.  Rather, he states generally that he is seeking declaratory, equitable, and injunctive relief under the Rosenthal Act and the UCL; general, special, actual, incidental and consequential damages according to proof at trial; pre-judgment interest; attorneys' fees; and restitution and rescission of Plaintiff's purchase contract.  *Id.*

On May 4, 2016, Defendant NFCU removed this case from the Superior Court of the State of California, County of San Diego.  ECF No. 1.  In its notice of removal, Navy

---

[2] The Rosenthal Act provides that consumer debt collectors are subject to the same remedies available under 15 U.S.C. § 1692k of the federal Fair Debt Collection Practices Act.  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1065 (9th Cir. 2011).

Federal alleges that federal jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Def.'s Notice of Removal ("DNR") ¶¶ 25-26, ECF No. 1 at 6.

## CAFA JURISDICTION

The Class Action Fairness Act vests district courts with original jurisdiction over class actions involving (1) an amount in controversy that "exceeds the sum or value of $5,000,000, exclusive of interests and costs"; (2) "100 or more persons"; and (3) parties that are minimally diverse. 28 U.S.C. § 1332(d); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014). CAFA requires that the proponent of federal jurisdiction carry the burden of establishing removal jurisdiction. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). NFCU's notice of removal alleges that it has met all three of CAFA's requirements. *See* DNR ¶¶ 25-46, ECF No. 1 at 6-9.

Generally, a defendant's notice of removal need only include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee*, 135 S. Ct at 554. However, in the event that a plaintiff or the court questions the defendant's allegation, 28 U.S.C. § 1446(c)(2)(B) requires the defendant to establish the amount in controversy by a preponderance of the evidence. *Id*. In determining the amount in controversy, the court will first look to the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). When jurisdiction is contested, the parties may also submit evidence outside the complaint, "including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). A defendant "cannot establish removal jurisdiction by mere speculation and conjecture" or with "unreasonable assumptions." *Id*. Evidence must be submitted related to the amount in controversy using reasonable assumptions underlying the theory of damages exposure. *Id.* at 1199. Put differently, district courts must evaluate CAFA jurisdiction based on "the reality of what is at stake in the litigation." *Id.* at 1198.

Here, because the Court questioned whether or not Defendant had adequately alleged CAFA's minimal jurisdictional amount of $5,000,000, it raised the issue *sua*

*sponte* in an order to show cause. *See* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." ); *see also Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## AMOUNT IN CONTROVERSY

**1. Class-wide rescission**

Defendant's amount-in-controversy calculation is predicated upon the assertion that Plaintiff seeks class-wide rescission of the auto-loan contracts entered into by Defendant and class members. *See* Def.'s Resp. to Sept. 7, 2016 Order to Show Cause ("Def.'s Resp."), ECF No. 28 at 8; *see also* DNR ¶ 36, ECF No. 1 at 8. Defendant argues that Plaintiff has "expressly put rescission of the subject loans on the table and into controversy" because Plaintiff stated, in its class action complaint, that "[w]hether Class Members are entitled to rescission" was a common question of law or fact among the class members. Def.'s Resp., ECF No. 28 at 8. As such, Defendant alleges that the amount in controversy is $1,170,749,582.08, as that number represents the value of the class loans subject to rescission. *Id.*

The Court disagrees with Defendant's conclusion that the complaint expressly puts class-wide rescission in controversy. In reaching that assumption, Defendant ignores the other factual allegations in the complaint, none of which seek class-wide rescission. For example, class-wide rescission is not one of the specific allegations of damages listed in Plaintiff's cause of action under either the Rosenthal Act or the UCL. Plaintiff also does not name class-wide rescission as a remedy for the class in his prayer for relief. This is notable because Plaintiff expressly states in his prayer for relief that he is seeking rescission of his auto loan contract under the individual causes of action he asserts, but does not state that he is seeking rescission for the class. Given this blatant inconsistency between the commonality questions required for class certification and Plaintiff's specific damages allegations, the Court cannot conclude that the former citation that Defendant relies upon is an accurate and reasonable representation of Plaintiff's theory of relief. *See*

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n.7 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *see also Ibarra*, 775 F.3d at 1197 ("a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions.").

Indeed, Plaintiff's opposition to Defendant's brief makes clear that he is, in fact, not seeking class-wide rescission. Pl.'s Opp. to Def.'s Resp. ("Pl.'s Opp."), ECF No. 29 at 7 ("Contrary to what NFCU claims, there is no prayer for class-wide rescission."). Plaintiff notes that the reference to class-wide rescission included in the commonality section was an error and that NFCU's reliance on it was "mistaken." *Id.* Because plaintiffs are the master of their complaints and because they can plead to avoid removal jurisdiction, Plaintiff's stipulation that he is not seeking class-wide rescission gives the Court further justification in concluding that class-wide rescission is not in controversy. *See Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 953 (9th Cir. 2009) (observing the "well-established rule" that plaintiffs are "masters of their complaint [ and] may choose their forum by selecting state over federal court"). Accordingly, the Court rejects Defendant's contention that there is over $1 billion in controversy based upon Plaintiff's request for class-wide rescission.

**2. Amount in controversy under the UCL**

Defendant further argues that the amount in controversy available under the UCL independently satisfies CAFA's jurisdictional minimum of $5 million. Def.'s Resp. at 5-6, ECF No. 28 at 9-10. The Court disagrees. For the reasons set forth below, Defendant has only shown, by a preponderance of the evidence, that the amount in controversy under the UCL is — at most — $2,723,952.34.

**a. Value of refund of loan payments vs. value of increased interest rate charges**

To support its contention that the amount in controversy available under the UCL meets the CAFA jurisdictional minimum, Defendant begins by arguing that: "[t]o the extent Plaintiff seeks an order: (1) requiring Navy Federal to refund any payments it has received under the subject loans; and (2) enjoining Navy Federal from collecting on those

7

3:16-cv-1086-GPC-WVG

loans in the future, the amount in controversy plainly would exceed $5 million." *Id.* The Court, however, rejects Defendant's assumption that Plaintiff seeks a "refund [of] any payments it has received under the subject loans" and seeks to enjoin "Navy Federal from collecting on those loans in the future." *See id.*

In the FAC, Plaintiff makes clear that he seeks, on behalf of the class, an order requiring Defendants to stop engaging in "acts of unfair competition" and to provide "restitution" or "equitable monetary relief . . . to restore any money or property which may have been acquired by means of such acts of unfair competition." FAC ¶¶ 68-69. The unfair conduct identified by Plaintiff is NFCU's practice of "[r]aising or threatening to raise the APR where the seller [of the vehicle] failed to deliver proper title" and "falsely representing that it had the right to increase the APR on the loans." FAC ¶ 63. Because the unfair conduct that Plaintiff complains of concerns Defendant's practice of raising the APR on unsecured auto loans, it is not reasonable for Defendant to argue that Plaintiff seeks a class-wide refund of payments collected under the subject loans or to enjoin NFCU from collecting on those loans in the future. *See Ibarra*, 775 F.3d at 1197.

Accordingly, the Court accepts Defendant's argument only insofar as it avers that "requiring Navy Federal to refund any increased interest charges it has received under loans that Navy Federal converted to a higher APR [and] . . . enjoining Navy Federal from collecting those increased interest charges going forward," places the value of the "additional interest that Navy Federal collected or stands to collect under the higher APR" into controversy. Def.'s Resp. at 6, ECF No. 28 at 10; Pendergast Decl. ¶¶ 5-6, ECF No. 28-1 at 3.

To carry its evidentiary burden as to this assertion, Defendant has provided the Court with the declaration of the Assistant Vice President of Consumer Lending for NFCU in order to establish the additional interest in controversy. Pendergast Decl., ECF No. 28-1 at 3. That declaration states that between February 26, 2012 and February 26, 2016 (i.e., the UCL class period), NFCU converted the APR on approximately 10,724 loans and that the additional interest levied on those loans amounts to $3,227,150.84. *Id.*

at ¶ 5. It also states that between February 26, 2012 and March 31, 2015, NFCU converted the APR on 8,259 loans and, thus, stands to collect $2,723,952.34 in higher interest rates on those instruments. *Id.* at ¶ 6. The difference between the two figures, the Assistant Vice President explains, is that the latter includes only loans that contained the "Preservation of Claims Clause," whereas the former tracks the class period and includes some loans without the clause. *See id.* at ¶ 2 (explaining that NFCU ceased using a lending agreement with a "Preservation of Claims Clause" by the end of March 2015). Because eligibility in the class is predicated on the inclusion of the "Preservation of Claims Clause" in an individual's auto loan, the Court finds that only the latter number, $2,723,952.34, correctly speaks to the amount in controversy.

But as Plaintiff points out, this $2,723,952.34 figure is likely much smaller than Defendant suggests because the number fails to account for another requirement of class membership: namely, that the individual purchased his or her car from a California dealership. Pl.'s Opp. at 10, ECF No. 29 at 13. Defendant's additional interest calculations, Plaintiff argues, are based on the number of California residents who received a letter form NFCU indicating that their APR would be raised if they did not record NFCU's security interest on their vehicle. *See id.* However, whether or not NFCU sent the letter to a person residing in California says nothing about whether that person bought their vehicle from a California dealership, as opposed to a non-California dealership or a private party transaction. *Id.*

The Court agrees with Plaintiff. Because Defendant has failed to produce any evidence or make any reasonable assumption regarding how many of the 8,259 loans were used to buy cars from California dealerships, the $2,723,952.34 figure that Defendant has proffered is an inflated estimate of the additional interest in controversy. The Court, however, need not dwell on this point because Defendant has not shown, for the reasons set forth below, that the amount in controversy exceeds $5 million even if the Court assumes, *arguendo*, that $2,723,952.34 accurately represents the amount of additional interest in controversy.

### b. Value of injunctive relief

In order to get to the $5 million jurisdictional minimum from $2,723,952.34, Defendant adds the cost of an injunction into the amount-in-controversy calculation. *See* Def.'s Resp. at 6, ECF No. 28 at 10. Defendant argues that NFCU "stands to lose significant amounts" if it is enjoined from increasing interest rates in the future. Def.'s Resp. at 6, ECF No. 28 at 10. It also argues that "[i]t is reasonable to presume that an injunction will cost Navy Federal at least as much or more in the future, thus further demonstrating that the cost to Navy Federal from an injunction of the type Plaintiff appears to be seeking is greater than $5 million." *Id.* The Court, however, is not persuaded by Defendant's argument

For one, Defendant cites to no relevant legal authority in support of its assertion that that the cost of complying with prospective injunctive relief belongs in the amount in controversy.[3] This omission troubles the Court because it seems incongruous to include the future cost of conforming its behavior to the law in the amount-in-controversy calculation. Indeed, the Ninth Circuit has observed that it is inappropriate to include the cost of complying with an injunction in the amount in controversy, when injunctive relief is not the primary relief sought, because otherwise "every incidental request for injunctive

---

[3] Both authorities that Defendant cites are not on point because they concern injunctive relief that sought to prevent the defendant from collecting an amount already owed rather than a hypothetical amount that would be owed in the future. For example, in *Mora v. Harley-Davidson Credit Corp.*,), the court found that the amount in controversy should include $20 million in already-owed deficiencies because that money was the object of plaintiff's suit and because the defendant stood to lose the right to collect on those deficiencies if plaintiff succeeded. 2009 WL 464465, at *5 (E.D. Cal. Feb. 24, 2009) ("Plaintiff claims [defendant] has no legal right to attempt to collect any claimed deficiency from him and a purported class of similarly situated" individuals). Similarly, in *Rosas v. Carnegie Mortgage, LLC*, the court held that an injunction that sought to prevent the defendant from foreclosing on properties worth more than $5 million put $5 million in controversy because that was what the defendant stood to lose. 2012 WL 1865480, *5 (C.D. Cal. May 21, 2012). By contrast, here, Defendant is asking the Court to include what it stands to lose in the future if it is no longer permitted to raise APR rates, not what it stands to lose now.

1  relief would satisfy the amount-in-controversy requirement." *See Kanter v. Warner-*
2  *Lambert Co.*, 265 F.3d 853, 860-61 (9th Cir. 2001).[4]

3  But even assuming the law did permit this Court to include the cost of complying
4  with a prospective injunction in the amount in controversy, the Court would decline to do
5  so here because Defendant has failed to carry its evidentiary burden.  Defendant has not
6  provided the Court with any evidence speaking to the loss in future profits that it would
7  incur if it were no longer able to raise interest rates in the manner at issue.  Defendant
8  states that "it stands to lose significant amounts" and that it "is reasonable to presume that
9  an injunction will cost Navy Federal at least as much or more in the future," but such
10 generalized assertions are no substitute for record evidence demonstrating the extent of the
11 loss that NFCU would incur if an injunction were to be granted.  *See Sanchez v.*
12 *Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996) (concluding that the
13 removing party had failed to satisfy its burden of proof by failing to provide the court with
14 evidence which would allow the court to assess the extent of loss that might occur if
15 injunctive relief were granted).  Accordingly, Defendant has failed to satisfy its burden
16 that the cost of an injunction would raise the amount in controversy from $2,723,952.34 to
17 $5 million or more.

**3. Amount in controversy under the Rosenthal Act**

The amount in controversy that Plaintiff seeks under the Rosenthal Act, Defendant
avers, also satisfies CAFA's jurisdictional minimum.  Defendant's argument proceeds as
follows.  First, Defendant argues that if statutory damages are awarded to each of the
16,710 individuals who received a 30-day letter from NFCU during the Rosenthal Class

---

[4] In *Kanter*, the amount-in-controversy provision was the $75,000 required under 28 U.S.C. § 1332 and not the $5 million required under CAFA.  Regardless, the reasoning in *Kanter* applies with equal force, here.  The plaintiffs in *Kanter* primarily sought "monetary compensation for consumers who relied on Defendant's misleading advertising" and, in addition, sought injunctive relief to prevent the defendant from continuing to sell their defective product.  *Id.* at 860.  Similarly, here, Plaintiff is primarily seeking monetary compensation for Defendant NFCU's unfair practice of raising APR rates and only additionally seeks to prevent Defendant from continuing to do so in the future.

period (i.e., one year prior to filing), then Plaintiff would be entitled to the statutory maximum of $500,000.[5]  Second, Defendant argues that if each member of the class receives just $279 in emotional damages, then the jurisdictional minimum will be met.[6]  Defendant goes on to point out that actual damages per individual class member could amount to $3,000 per individual given similar awards in other districts.[7]

This argument, however suffers from a fatal flaw — namely, that Plaintiff does not seek emotional damages in its complaint.  Defendant speculates as to what the class members would recover in emotional damages under the Rosenthal Act, and yet nowhere in Plaintiff's complaint does it make any mention of emotional harm or allege any facts that could establish such a right to emotional damages.  Such speculation and conjecture, based on the unreasonable assumption that Plaintiff will seek emotional damages for the class, cannot serve as the basis for removal jurisdiction.  *See Ibarra*, 775 F.3d at 1197.

Accordingly, the most in damages that Defendant has established by a preponderance of the evidence under the Rosenthal Act is $500,000 in statutory damages.

**4. Reasonable Attorneys' Fees**

The last potential source of recovery in this action is attorneys' fees.  Both the Rosenthal Act and the UCL authorize the recovery of attorneys' fees and costs, *see* Cal. Civ. Code § 1788.30(c); *see also Walker v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 2d 79, 1179 (Cal. Ct. App. 2002) ("if a plaintiff prevails in an unfair competition law claim, it may seek attorney fees as a private attorney general pursuant to Code of Civil Procedure section 102.5."), and those fees and costs are properly included in the amount in controversy, *see Lowdermilk v. U.S. Bank Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *rev'd on other grounds*, *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193 (9th Cir. 2015).

---

[5] Statutory damages per individual can amount to $1,000 under the Rosenthal Act, but the total amount awarded cannot exceed $500,000.  Cal. Civ. Code § 1788.17.
[6] $279 x 16,710 = $4,511,430 + 500,000 (statutory damages) = $5,011,430.
[7] Defendant cites to *Sweetland v. Stevens & James, Inc.*, 563 F. Supp. 2d 300, 304 (D. Me. 2008), *Donahue v. NFS, Inc.*, 781 F. Supp. 188, 194 (W.D.N.Y. 1991), and *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 193 (D. Del. 1991), all of which address awards for emotional damages.

1      In its notice of removal, Defendant suggests that Plaintiff might be entitled to up to
one-third of his recovery in attorneys' fees.  DNR ¶ 41 ("If the Court certified a class and
awarded Plaintiff's counsel one-third of the recovery in attorneys' fees, the damages
award would need to be just $3,750,000 in order for the additional third in fees to add up
to more than the jurisdictional minimum.").  Defendant, however, cites to no legal
authority to support its assertion that the proper recovery for attorneys' fees is one-third of
the total recovery.  Defendant also cites to no relevant precedent in its response to the
Court's order to show cause.[8]  What's more, the Court's independent research
demonstrates that, contrary to what Defendant suggests, the correct percentage for
estimating an award of attorneys' fees is 25 percent.  *See Hanlon v. Chrysler Corp.*, 150
F.3d 1011, 1029 (9th Cir. 1998) (observing that the "benchmark award for attorney fees"
in a class action is 25%).

       Even assuming that the proper award for attorneys' fees is Defendant's theory of
one-third of the total recovery, Defendant still has not met the jurisdictional minimum.
Defendant has provided the Court with evidence that it stands to lose $2,723,952.34 in
increased interest rate charges and $500,000 in statutory damages, for a total of
$3,223,952.34.  Any attorneys' fees earned on that recovery, at the rate of one-third of the
total relief, however, still does not amount to the $5 million jurisdictional minimum.[9]

/ / / /

/ / / /

/ / / /

/ / /

---

[8] In fact, Defendant does not even mention attorneys' fees and costs in its order-to-show-cause brief.
[9] $3,223,952.34 (total recovery) x (1/3) (attorneys' fees and costs rate) = $967,185.70 in attorneys' fees. $3,223,952.34 (total recovery) + $967,185.70 (attorney's fees and costs) = $4,191,138.04.

13

## **CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the case be remanded back to state court for lack of subject matter jurisdiction.

Dated: December 5, 2016

Hon. Gonzalo P. Curiel
United States District Judge